**TRANSAMERICA TITLE INSURANCE CO.,**
Appellant,

v.

**Mary B. RAMSEY, Appellee.**

No. 1628.

Supreme Court of Alaska.

March 9, 1973.

Rehearing Denied May 14, 1973.

Joseph W. Sheehan, of Rice, Hoppner, Blair & Associates, Fairbanks, for appellant.

Edward A. Merdes, of Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellee.

## OPINION

BOOCHEVER, Justice.

Mary B. Ramsey sued the Transamerica Title Insurance Company (hereinafter Title Company) alleging that it had breached its contract to furnish a suitable title insurance policy and was further liable for negligent breach of duty. The trial court directed a verdict for the Title Company on the contract claim but submitted the negligence claim to the jury. The jury returned a verdict for Mrs. Ramsey of $30,000 special damages and $5,000 general damages.

The Title Company has appealed contending that there was no basis for submission of the negligence issue to the jury; that Mrs. Ramsey acting through her attorney was contributorily negligent; that there were errors in instructions to the jury and in the admission of evidence; and that the damages awarded were improper.

In April 1966 Mrs. Ramsey went to the Title Company office advising its agent, Lyle Johnson, that she wanted "whatever is supplied by a title company to permit me to sell a valid piece of merchandise to Mr. Hartman and Mr. Summers."[1] The property in question was owned by Mrs. Ramsey and her former husband, Mr. Smith, as tenants in common.[2] Mrs. Ramsey explained that Mr. Smith was out of town and that she intended to proceed by use of a power of attorney that he had executed in 1952 authorizing her to act on his behalf.

Mr. Johnson asked to look at the power of attorney. The next day Mrs. Ramsey brought the power of attorney to Mr. Johnson who examined it. The Title Company then issued a letter of commitment to issue a title policy. The letter indicated that title to the property was vested in Stanley E. Smith and Mary Smith, his wife, as tenants in common and made no mention of the power of attorney.

Unknown to Mrs. Ramsey, Mr. Smith had recorded a revocation of the power of attorney on February 2, 1966. A copy of the revocation was on file with the Title Company at the time that Mrs. Ramsey conferred with Mr. Johnson, but Mrs. Ramsey was never advised of the revocation and of her consequent inability to enter into an effective contract of sale on Mr. Smith's behalf. The contract of sale, providing for a purchase price of $45,925,[3] was executed by Mrs. Ramsey individually and as attorney in fact for Mr. Smith.

A few months later Mr. Smith returned to Alaska and claimed that the sale was invalid and alternatively that he was entitled to half of the proceeds. He also brought a separate suit alleging that Mrs. Ramsey had procured the divorce from him by means of fraud. After tendering the defense of the suits to the Title Company, the attorneys for Mrs. Ramsey negotiated a settlement by payment to Mr. Smith of the sum of $25,000. At the time of Mr. Smith's intervention the purchasers of the property ceased to make payment and Mrs. Ramsey was forced to borrow $4,500 to meet her other financial obligations. She also incurred attorney's fees and interest costs. After the settlement of Mr. Smith's lawsuits the purchasers resumed payments under the contract and eventually, after condemnation of the property by the state, the full purchase price was paid to Mrs. Ramsey.

## I. THE NEGLIGENCE ISSUE

The Title Company contends that since the court found it to be not liable for breach of contract, the issue of its negligence should not have been submitted to the jury. Any question as to the applicable law in Alaska on this issue was laid to rest by our decision in Howarth v. Pfeifer.[4] In that case the purchaser of an apartment building under an installment contract agreed with the vendor to secure fire insurance on the building with loss payable to the parties as their interests appeared. The vendor testified that he called

---

1. Alaska has no statutory requirement for obtaining title insurance in order to sell property, although Mrs. Ramsey apparently thought there was such a requirement.

2. Mrs. Ramsey had obtained a decree of divorce from Mr. Smith on November 14, 1958. The decree provided that the subject property shall remain the property of the parties as tenants in common. Mrs. Ramsey was designated manager of the property.

3. The contract called for a down payment of $1,000 and monthly payments of $500. Interest at six percent per annum was included in the monthly payments.

4. 443 P.2d 39 (Alaska 1968).

the purchaser's insurance agent, and upon being advised that the purchaser had obtained the coverage, the vendor then called his own insurance agency, cancelling his policy. The property was damaged by fire and it was then ascertained that the purchasers did not have coverage. Although the vendor had no contractual relationship with the purchaser's insurance agency, we held:

The main question here is whether there should be liability for negligent language, and under what circumstances liability should exist. In England the general rule had been that there was no liability for negligence in word as distinguished from act. The American courts, however, have been more liberal and have held in some instances that a negligent statement may be the basis for the recovery of damages. But principles of law in this area are not well-defined. "Not every casual response, not every idle word, gives rise to a cause of action." Liability arises only where there is a duty, if one speaks at all, to give correct information. And this involves various considerations, such as the existence of knowledge, or its equivalent, on the defendant's part that the information is desired for a serious purpose and that the plaintiff intends to rely upon it, foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm.

Application of those factors here makes a case for the jury on the question of negligent misrepresentation. (Footnotes omitted.)[5]

Applying these principles of law to this appeal, the jury could have found that the Title Company was advised by Mrs. Ramsey that she intended to enter into the contract of sale by use of the power of attorney. Mr. Johnson, its agent, requested that she furnish him with a copy of the power of attorney. He knew that she desired information as to her legal capability to sell the property by use of the power of attorney, a serious purpose, and that she intended to rely upon that information. There was foreseeable harm to Mrs. Ramsey and sufficient connection between the Title Company's conduct and the injury suffered.

It is true that the commitment to issue the title policy did not refer to the power of attorney at all, merely indicating that title was vested in Mr. and Mrs. Smith (now Mrs. Ramsey). The jury could have found, however, that the Title Company was fully advised of Mrs. Ramsey's intentions, and by its actions led her to believe that she could properly sell the property by use of the power of attorney. Under those circumstances the company breached its duty of care which was owed to her, by not revealing to her that the power of attorney had been revoked.[6] That informa-

---

5. *Id.* at 42.

6. Mr. Johnson testified that he qualified his opinion as to the validity of the power of attorney by stating "it was valid if it had not been revoked." Based on Mrs. Ramsey's testimony, there was sufficient evidence to go to the jury on the question of whether a duty was owed by the Title Company to inform Mrs. Ramsey of the revocation of the power of attorney and of its breach of that duty. The jury was properly instructed:

The plaintiff has the burden of proving by a preponderance of the evidence the following issues:
(1) That the defendant had a duty to provide the alleged information to plaintiff;
(2) That the defendant violated its duty to the plaintiff;
(3) That the defendant's negligence proximately caused injury to the plaintiff; and
(4) The nature and extent of the injuries and damages sustained by the plaintiff which were proximately caused by the negligence of the defendant.

In determining whether or not an issue has been proven by a preponderance of the evidence, you should consider all of the evidence bearing on that issue regardless of who produced it. (Instruction No. 21)

Instruction No. 23 provided in part:
In arriving at a determination as to whether or not the defendant was negli-

tion was readily available to the Title Company by means of checking its own files.

As we stated in *Howarth*:

Assuming the presence of the essential factors establishing a duty of care, then those engaged in the insurance business are required to speak carefully regarding insurance matters because of the foreseeability of pecuniary harm if they speak without reasonable care. Such persons understand perfectly well the peculiar urgency of the need for correct information on whether property is covered by insurance or not.[7]

The jury could well find that the Title Company had a duty "to speak carefully" to Mrs. Ramsey and to advise her of the revocation of the power of attorney. There was evidence presented from which the jury could further find that the Title Company violated that duty proximately causing injury to Mrs. Ramsey. We see no reason to distinguish between the misfeasance involved in the *Howarth* case wherein erroneous information was furnished by the insurance agent and the nonfeasance of the Title Company here involved in failing to advise Mrs. Ramsey that the power of attorney had been revoked. The underlying purpose of the misfeasance-nonfeasance distinction was recognized by Justice Cardozo in the landmark case of H. R. Moch Co., Inc. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896, 898 (Ct.App.N.Y.1928):

"It is ancient learning that one who assumes to act, even though gratuitously,

may thereby become subject to the duty of acting carefully, if he acts at all." . . . The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all. A time-honored formula often phrases the distinction as one between misfeasance and nonfeasance. Incomplete the formula is, and so at times misleading. *Given a relation involving in its existence a duty of care irrespective of a contract, a tort may result as well from acts of omission as of commission in the fulfillment of the duty thus recognized by law.* . . . (Citations omitted, emphasis added.)

■ If we were to attempt to distinguish *Howarth* on the basis of the nature of the violation of the duty owed to Mrs. Ramsey by Transamerica we would be falling into the conceptual trap Cardozo was warning against. The holding of *Howarth* goes to the type of duty owed the public by one who holds himself out as a professional giver of information. If a violation of that duty is established it is irrelevant if the violation is a "misfeasance" or a "nonfeasance". Accordingly, we affirm the trial court's denial of a directed verdict since there was sufficient evidence to go to the jury on the negligence issue.[8]

## II. DAMAGES

The jury awarded Mrs. Ramsey $5,000 general damages and $30,000 special damages. The award of $5,000 general damages for Mrs. Ramsey's mental suffering,

---

gent, you may take into account the statements and communications between the plaintiff and defendant, if any, the nature and scope of the business of the defendant and the resources available to it, if any; whether or not the knowledge of the revocation of Mr. Smith's power of attorney was known to the defendant Title Company, or whether in the exercise of reasonable care defendant Title Company should have known of the revocation; whether or not the defendant Title Company owed any duty to disclose the aforementioned knowledge

to the plaintiff; whether or not the plaintiff relied in any way upon the misrepresentation of the defendant, and any other facts and circumstances which you find had been established by the evidence bearing on the question of negligence.

7. 443 P.2d at 42.

8. In reviewing a ruling on a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the motion was made. Mertz v. Covington Corp., 470 P.2d 532 (Alaska 1970).

anguish, embarrassment and humiliation is not contested. With reference to special damages the court indicated that the jury might consider:

| | | |
|---|---|---|
| 1. | The costs of settling the lawsuits in the sum of | $25,000.00 |
| 2. | Loan costs incurred to effect the settlement of approximately | 700.00 |
| 3. | Interest on the loan | 2,871.25 |
| 4. | Attorney's fees to Mr. Phillips who represented her in the lawsuits | 494.99 |
| 5. | Attorney's fees paid to Merdes, Schaible, Staley & DeLisio for representation in the lawsuits | 3,255.41 |
| 6. | Attorney's fees of Mr. Smith in prosecuting the lawsuits | 2,500.00 |
| 7. | Additional attorney's fees testified as being owed to the Merdes firm | 6,000.00 |

The Title Company does not dispute the following items:

| | | |
|---|---|---|
| 1. | Loan costs incurred in securing the $25,000 loan to settle Mr. Smith's lawsuits | $ 724.00 |
| 2. | Interest expense on the loan | 2,871.25 |
| 3. | Attorney's fees to Mr. Phillips in suit brought by Mr. Smith | 494.99 |
| 4. | Attorney's fees to Merdes, Schaible, Staley & DeLisio in suits by former husband [9] | 3,205.41 |
| 5. | Attorney's fees incurred by Smith | 2,037.50 |
| | | $9,333.65 |

It does question the award of the balance of special damages amounting to $20,666.-35.

Thus in dispute is the portion of the $30,000.00 award of special damages attributable to the settlement of the Smith lawsuit for the sum of $25,000.00, Mr. Smith's attorney's fees in prosecuting those lawsuits in the sum of $2,500.00 (to the extent that they exceed $2,037.50), and additional attorney's fees owed the firm of Merdes, Schaible, Staley & DeLisio in the approximate amount of $6,000.00. The instruction properly stated:

> However, as to these items of special damages no recovery can be had unless you find by the preponderance of the evidence that such damages naturally and proximately result from the injury.

On this appeal we are confronted with the question of whether the evidence when viewed most favorably to the plaintiff justifies the jury's award of the disputed sum of $20,666.35.

The general principle underlying the assessment of damages in tort cases is that an injured person is entitled to be replaced as nearly as possible in the position he would have occupied had it not been for the defendant's tort. (Footnote omitted.) [10]

■ In suits based on misrepresentation the damages must be established with reasonable certainty and must not be speculative or contingent.[11] Mrs. Ramsey is entitled to be replaced as nearly as possible in the position she would have occupied had the Title Company advised her that the power of attorney had been rescinded. She is not, however, entitled to recover more than the loss actually suffered. Moreover, the loss must be proximately caused by the defendant's conduct.[12]

■ With these standards in mind, our first inquiry pertains to Mr. Smith's lawsuits and their settlement. One of those cases was based on alleged fraud in procuring the divorce. The negligence of the Title Company cannot be regarded as a proximate cause of expenditures incurred in connection with that litigation. Any possible connection is too tenuous to be considered. The only expenses specifically relating to that lawsuit, however, were $288.75 of the attorney's fees paid the Merdes firm, and that relatively small amount has not been questioned on this appeal.

■ The remaining lawsuit arose out of the sale of the property by use of the revoked power of attorney. Since the sale might not have occurred had Mrs. Ramsey been advised of the revocation, her dam-

9. Mrs. Ramsey testified that she had paid $3,205.41. The court's instruction referred to the sum of $3,255.41.

10. Beaulieu v. Elliott, 434 P.2d 665, 670–671 (Alaska 1967).

11. Prosser, Law of Torts § 110, at 731 (4th ed. 1971).

12. *Id.* at 732.

ages attributable to that lawsuit could properly be considered by the jury to the extent that those damages were proximately caused by the Title Company's breach of duty.

■ Mrs. Ramsey admitted that she had planned to share the proceeds of the sale of the property equally with Mr. Smith. Since the property sold for $45,925.00 he would have been entitled to $22,962.50. The settlement was for $25,000.00 so Mrs. Ramsey was damaged to the extent of $2,037.50. Mrs. Ramsey testified that the $25,000 settlement included Mr. Smith's attorney's fees. Mr. Smith testified that he did not know the amount of attorney's fees that he paid to Mr. Jeffries, an Alaskan attorney who represented him in the lawsuits, but that he paid a Florida attorney, who also represented him, $2,500 "[t]hat was out of my own pocket. It came out of the $25,000." The burden of proving the damages was on the plaintiff. The only evidence as to specific amounts paid by Smith for attorney's fees was his testimony as to payment of $2,500 to Florida counsel. Since the settlement apparently included $2,037.50 for attorney's fees the additional amount paid was $462.50, the maximum that the evidence permitted the jury to award for that item.[13]

■ Remaining for consideration is the additional attorney's fee allegedly due the law firm of Merdes, Schaible, Staley & DeLisio. Mrs. Ramsey had agreed to pay them a fee of $30 per hour for their representation in the lawsuit pertaining to the alleged fraud in securing the divorce, and $288.75 was paid for that unrelated litigation. With reference to the other lawsuit she agreed to pay "25% of all amounts I receive from the sale of said 1325 Cushman Street Property." Again viewing the evidence most favorably to the plaintiff, we find that she received from the sale of the property $22,962.50, one-half of the total price paid. Thus the attorneys under their agreement were entitled to a total fee of $5,740.63. The amount previously paid was $3,205.41.[14] When that sum is deducted from the amount agreed to be paid, $2,535.22 could be regarded as still due the law firm. Mrs. Ramsey testified that she did owe them more money stating: "Well I believe it's in the neighborhood of hmm —Six Thousand Five Hundred Dollars ($6500.00). I can't give you an exact figure on that, sir." We conclude that the maximum award that the evidence permitted for this item is the $2,535.22, which would be remaining due under the contract entered into with the firm.

■ We therefore find that the maximum damages justified by the evidence in addition to the $9,333.65 admitted by the Title Company was $2,997.72 ($2,535.22 remaining due the firm of Merdes, Schaible, Staley & DeLisio plus the $462.50 additional attorney's fees established by Mr. Smith's testimony). Thus the maximum special damages allowable were $12,331.37. To the extent that the special damages exceeded $12,331.37 they were not supported by evidence and accordingly the damages must be reduced by the amount of $17,668.63.[15]

13. No question has been presented as to the Title Company's liability for breach of duty to Mr. Smith who assigned his claim to Mrs. Ramsey. We therefore do not reach that question. (The Title Company did question whether there was any breach of duty to Mrs. Ramsey.)

14. This includes the $288.75 paid on the other lawsuit. Since this was not an item of damages proximately caused by the Title Company we do not add that to the balance of fees that could have been awarded. Under the result reached in this opinion this sum may still be due and owing by Mrs. Ramsey to the law firm.

15. The Title Company properly objected to the submission to the jury of the excessive items of damages. While in its opening brief it did not comply with Supreme Court Rule 11(a)(6) by setting forth the charge of the court verbatim together with the grounds of objection urged at the trial, the substance of the instruction and the grounds of objection were set forth. We do not approve such a failure to comply with Rule 11, but in view of the nature

## III. THE CONTRIBUTORY NEGLIGENCE ISSUE

Mrs. Ramsey retained an attorney, other than the firm which represents her in this case, to handle the sale of the property to Mr. Hartman and Mr. Summers. The Title Company contends that if it were negligent in failing to advise Mrs. Ramsey that the power of attorney had been revoked, that the attorney was likewise negligent in failing to check on the validity of the power of attorney. It argues that the negligence of the attorney is imputable to Mrs. Ramsey, thus constituting contributory negligence on her part and barring recovery. In view of the fact that the lawyer was informed by Mrs. Ramsey that she had presented the power of attorney to the Title Company which had failed to indicate any revocation, we have grave doubts as to whether a jury issue was presented as to negligence of the attorney. In any event contributory negligence was not pleaded as a defense as required by Alaska Civil Rule 8(c) [16] and the record fails to indicate that the issue was tried by consent of Mrs. Ramsey.[17] The trial court did not err in refusing to give a requested instruction on this issue, which had not been raised by the pleadings.

## IV. ALLEGED ERRORS IN INSTRUCTIONS AND ADMISSIBILITY OF EVIDENCE

The Title Company contends that Mrs. Ramsey had constructive notice of the recorded revocation of the power of attorney so as to preclude recovery on a theory of reliance on the Title Company. A title company is in no position to contend that a client is barred from recovery due to constructive notice of a recorded instrument, since ascertaining the status of records is one of its principal functions. The trial court did not err in refusing to give the Title Company's requested instructions concerning that contention.

General contentions are raised that other instructions were "lacking and misleading" and that the court erred in giving other requested instructions. We refuse to consider such general objections.[18]

We likewise find no merit in the Title Company's contention that evidence was improperly admitted. Evidence of a title insurance policy subsequently issued by the Title Company to the First National Bank of Fairbanks, Alaska, on the property in question was admitted into evidence. That policy also failed to mention that the

of the error involved and the fact that the issue was clearly presented, we have elected to relax the requirement to prevent injustice. Supreme Court Rule 52 specifies:
These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice.

16. Alaska Civ.R. 8(c) specifies in part:
In pleading to a preceding pleading, a party shall set forth affirmatively . . . contributory negligence . . . .

17. Alaska Civil Rule 15(b) authorizes amendments to the pleadings to conform to the evidence and to raise issues tried by express or implied consent of the parties. Some evidence was introduced to the effect that the attorney was negligent in relying on the letter of commitment. That evidence, however, could have been considered as relevant to issues of the Title Company's negligence and whether such

negligence proximately caused injury to Mrs. Ramsey. When evidence is relevant to an issue already in a case and there is no indication at trial that the party who introduced the evidence is seeking to introduce a new issue, it will not be considered as creating an implied consent to the trial of that issue. Accordingly, it does not justify an amendment to the pleading. Wirtz v. Savannah Bank & Trust Co., 362 F.2d 857, 861 n. 3 (5th Cir. 1966); Sims v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941); 6 Wright & Miller, Federal Practice & Procedure, Civil § 1493, at 462 (1971).

18. The instructions were not set out verbatim together with the grounds of the objections urged at the trial as required by Supreme Court Rule 11(a)(6). In the past we have refused to consider such matters: Higgins v. Lantz, 394 P.2d 776, 777 (Alaska 1964); Crume v. Crume, 378 P.2d 183, 185 (Alaska 1963); Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

power of attorney had been revoked. The evidence was relevant in: (1) reflecting on the credibility of witness Johnson when he testified that in his original conversation with Mrs. Ramsey, he had qualified his opinion with a warning that the power had been revoked; (2) tending to prove that the failure to find the revocation was due to negligence in Transamerica's title search procedures; and (3) tending to prove that the omission of the revocation was not due to the lack of a specific request, but was due to the company's negligence since the bank would have requested a search of all instruments relative to Mrs. Ramsey's ability to convey title. In addition, Transamerica has failed to show why the introduction of the policy was prejudicial and, in fact, inquired into the nature of the policy in its own case. Thus, the objection is without merit.

 The Title Company also contends that it was error for an expert witness, Mrs. Loennig, a former vice-president of the company and the supervisor of Mr. Johnson in 1966 to testify as to the "duty" of the Title Company to Mrs. Ramsey. In the context of the witness' prior testimony it appears that she was giving evidence as to the customary procedures followed by the Title Company. The operations of a title company are not matters of general knowledge and accordingly it is the type of subject on which expert testimony may be of assistance to the jury. In Ferrell v. Baxter, 484 P.2d 250, 268–269 (Alaska 1971) we said:

> Although appellees also rely on the argument that the witness should not have been permitted to testify regarding an ultimate issue in the case, *we must expressly reject such a position.* We held

in Oxenberg v. State, 362 P.2d 893, 900 (Alaska, cert. denied, 368 U.S. 56, 82 S. Ct. 189, 7 L.Ed.2d 128 (1961), that if the jury *"could receive appreciable help or assistance from the opinion of the expert witness, then his testimony was admissible.* It would not be a ground for objection in the latter instance that the opinion embraced the ultimate issue to be decided, i. e., the cause of the fire. The jury decides this issue—not the expert witness—and all that is done is to permit the jury to receive some assistance where it is needed and from a person who, because of his training, experience and observations, is able to render that assistance." (Emphasis added.)

We further note that Mrs. Loennig had previous given testimony concerning the duties of the company without objection, so that at most the objected testimony was cumulative and any error in permitting the testimony would not have been prejudicial.[19]

 The Title Company further argues that it was error to admit evidence of Mrs. Ramsey's good character in the community contending that it was irrelevant and that there had been no effort made to impeach her. As the trial judge recognized, the evidence of her prior reputation was directly relevant to the issue of damages since she was contending that her reputation had been damaged as a result of her erroneous attempt to convey the property.

The judgment below is affirmed as to the liability of the Title Company, but the case is remanded with directions that the judgment as to damages be vacated and a judgment entered in favor of the plaintiff in the amount of $17,331.37.[20]

19. Gregory v. Padilla, 379 P.2d 951, 954 (Alaska 1963).

20. 6A J. Moore, Moore's Federal Practice ¶ 59.05[3], at 3749 (2d ed. 1972) states: . . . where the court is satisfied that the issue of liability has been properly determined in favor of the plaintiff and it could, therefore, limit the new trial to the issue of damages, but there is no genuine factual issue as to recoverable damages, the court has the power to order judgment for the amount of recoverable damages.
*See* Feinsinger v. Bard, 195 F.2d 45 (7th Cir. 1952).