Helmut B. BUBBEL, Appellant,
Cross-Appellee,

v.

WIEN AIR ALASKA, INC., Appellee,
Cross-Appellant.

Nos. 6019, 6100.

Supreme Court of Alaska.

April 27, 1984.

Joseph W. Sheehan, Fairbanks, for appellant, cross-appellee.

Max N. Peabody, Shimek & Peabody, Anchorage, for appellee, cross-appellant.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.[*]

## OPINION

RABINOWITZ, Justice.

This case arises from representations made by Wien Air Alaska (Wien) to Helmut B. Bubbel (Bubbel) that he would be hired as a permanent economic replacement during the 1977 Wien airline pilots' strike. The superior court granted a directed verdict in Wien's favor and this appeal followed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. The collective bargaining agreement between Wien and the Airline Pilots Association (ALPA), the certified bargaining agent representing Wien pilots, expired on November 30, 1976. In the course of negotiations for a new contract, Wien and ALPA were unable to resolve the main issue of contention: the necessity of having three pilots operate Wien's Boeing 737 jets. After several

[*] Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

months of unsuccessful negotiations, Wien pilots went on strike in May of 1977.

During the strike Wien hired and trained replacement pilots. Bubbel was offered a position as a replacement pilot, which he accepted in October 1977. At that time, Bubbel was informed by Loren Tilman, a Wien flight operations assistant, that Wien intended to fight the striking pilots successfully and that the replacement pilots were to be hired permanently. Throughout the strike, Wien management personnel continued to make representations that the replacement pilots were permanent employees and that they would not lose their positions to the striking pilots if the strike was settled.

With the help of the replacement pilots, Wien was able to resume full operations by the end of 1977. In late 1978 and early 1979, a Presidential Emergency Board[1] met to discuss the main strike issues. In February 1979, the Presidential Emergency Board published its recommendations. It recommended a settlement providing that ALPA accept a two-pilot operation of Wien's Boeing 737 jets and that Wien displace the replacement pilots in favor of the striking pilots.

Although the recommendations were not binding on Wien or the striking pilots, they were incorporated into the collective bargaining agreement negotiated between Wien and ALPA on March 1, 1979. As a result of this agreement, the striking pilots were rehired with seniority, and the replacement pilots were laid off based on seniority. Under this new collective bargaining agreement Bubbel was furloughed in March 1979 and placed on Wien's inactive pilots list.

**1.** The Presidential Emergency Board was created pursuant to 45 U.S.C. 160 and Section 44 of the Airline Deregulation Act of 1978, Pub.L. No. 95-504, 92 Stat. 1705 (1978).

**2.** Wien argues in its supplemental brief that under *Andrews v. Louisville and Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), the Board of Adjustment created by the RLA provides the exclusive administrative remedy available to aggrieved employees. This

Thereafter, Bubbel filed a complaint in the superior court, alleging breach of an employment contract and intentional misrepresentation. Wien then moved for summary judgment. Wien argued that pursuant to the Railway Labor Act, 45 U.S.C.A. §§ 151-188 (1972), Bubbel's individual employment contract was superseded by the collective bargaining agreement executed between Wien and ALPA. Wien also contended that Bubbel's complaint should be dismissed for want of subject matter jurisdiction. The superior court rejected the latter contention, but granted summary judgment against Bubbel on his breach of contract claim. Wien did not seek review of the jurisdictional ruling,[2] and Bubbel did not seek review of the dismissal of his breach of contract claim.

Bubbel subsequently filed a second amended complaint. This pleading asserted claims based on equitable estoppel, quasi-estoppel and both negligent and fraudulent misrepresentation. The matter then went to trial and after presentation of Bubbel's case in chief, Wien moved for a directed verdict arguing that as a matter of law Bubbel's evidence was insufficient to sustain a recovery under any of the alleged theories. Wien's motion for directed verdict was granted, and judgment was entered in its favor. Wien was awarded costs and attorney's fees. Bubbel's motion for a new trial was denied.

## II. STANDARD OF REVIEW

In reviewing motions for directed verdict the proper role of this court "is not to weigh conflicting evidence or judge of the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the

is the same jurisdictional argument that Wien made below. We agree with the superior court's analysis of *Andrews.* Since resolution of Bubbel's dispute with Wien does not require interpretation of the collective bargaining agreement between ALPA and Wien, the superior court was correct in assuming jurisdiction. *See Andrews,* 406 U.S. at 324, 92 S.Ct. at 1565, 32 L.Ed.2d at 99.

nonmoving party, is such that reasonable men could not differ in their judgment." *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974) (footnote omitted); *City of Fairbanks v. Nesbett,* 432 P.2d 607, 609 (Alaska 1967). "The test is objective; and, if there is room for diversity of opinion among reasonable people, the question is one for the jury." *City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 220 (Alaska 1978) (footnote omitted). We must therefore view the evidence in the present case in the light most favorable to Bubbel in determining whether the superior court erred in granting Wien's motion for a directed verdict as to Bubbel's estoppel and misrepresentation claims.

## III. CONTRACT AND ESTOPPEL

In directing a verdict against Bubbel on his estoppel theory, the superior court relied upon its prior summary judgment ruling that Wien had not breached Bubbel's employment contract. The court reasoned that since Wien had not breached Bubbel's contract, it "could not be estopped from denying liability on that contract." Bubbel argues that under the recent opinion of the United States Supreme Court in *Belknap v. Hale,* —— U.S. ——, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), the superior court's conclusion that Wien did not breach its employment contract with Bubbel is erroneous. However, while Bubbel included the superior court's adverse summary judgment on the contract claim in his amended statement of points on appeal, he failed to brief that issue in his opening and reply briefs to this court. In light of Bubbel's failure to brief the issue, Wien urges that the contract claim be treated as abandoned.

Ordinarily we will not consider an issue omitted from a party's briefs, even if it was listed as a point on appeal. *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977). However, in this case the superior court's directed verdict against Bubbel on his estoppel claim was premised entirely on the prior summary judgment as to Bubbel's contract claim. Moreover, both parties addressed the contract claim, and the impact of *Belknap v. Hale* on that claim, in their supplemental briefs. For these reasons, we find it appropriate to address the merits of the superior court's ruling as to Bubbel's breach of contract claim.[3]

The superior court concluded that insofar as Bubbel's contract with Wien conflicted with the subsequent collective bargaining agreement between Wien and ALPA, the collective bargaining agreement arrived at in settlement of the Wien-ALPA dispute superseded Bubbel's individual contract of employment. The superior court relied upon *Rouse v. Anchorage School District,* 613 P.2d 263 (Alaska 1980), where this court held that individual school teachers could not obtain a "vested" longevity bonus that their union had subsequently bargained away in obtaining a new collective bargaining agreement.

The superior court also cited two federal cases. In *J.I. Case Co. v. National Labor Relations Board,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), the Supreme Court ruled that an employer could not refuse to bargain with a properly-chosen union simply because it was bound by the terms of pre-existing individual employment contracts. In approving a NLRB "cease-and-desist" order which required the employer to stop giving effect to the individual contracts, the Court stated:

> Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of ... to forestall bargaining or to limit or condition the terms of the collective agreement.

321 U.S. at 337, 64 S.Ct. at 580, 88 L.Ed. at 767.

In *Lewellyn v. Fleming,* 154 F.2d 211 (10th Cir.), *cert. denied,* 329 U.S. 715, 67

---

**3.** *See Vest v. First National Bank of Fairbanks,* 659 P.2d 1233, 1234 n. 2 (Alaska 1983): "where ... an issue that has not been raised involves a question of law that is critical to a proper and just decision, we will not hesitate to consider it, particularly after calling the matter to the attention of the parties and affording them the opportunity to brief the issue."

**378**

S.Ct. 45, 91 L.Ed. 620 (1946), the Tenth Circuit followed *Case* in construing the Railway Labor Act (RLA) (which also governs airlines). The court held that a collective bargaining agreement between a railroad and a conductors' union superseded a prior employment contract between the railroad and a non-union brakeman. The court affirmed the trial court's ruling that the brakeman had no cause of action to enforce the seniority rights he had acquired under his individual contract. 154 F.2d at 213.

In applying *J.I. Case* and other relevant federal precedent to the instant case, we believe *Belknap v. Hale*, —— U.S. ——, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), a Supreme Court case involving facts virtually identical to those before us, is controlling. In *Belknap* an employer hired "permanent" replacements for striking workers, and then laid them off when the strikers returned. The displaced replacements sued for misrepresentation and breach of contract. A Kentucky trial court granted summary judgment for the employer, ruling that the suit was pre-empted by the National Labor Relations Act (NLRA).[4] The Kentucky Court of Appeals reversed, reasoning that the contract and misrepresentation claims were of only peripheral concern to the NLRA and were deeply rooted in state law.

Affirming the Kentucky Court of Appeals, the Supreme Court of the United States addressed the same argument of superseding-union-agreements that the superior court relied on in granting Wien summary judgment on Bubbel's contract claim:

It is said that respondent replacements are employees within the bargaining unit, that the Union is the bargaining representative of petitioner's employees, and the replacements are thus bound by the terms of the settlement negotiated between the employer and "their" representative. The argument is not only that as a matter of federal law the employer cannot be foreclosed from discharging the replacements pursuant to a contract with a bargaining agent, but also that by virtue of the agreement with the Union it is relieved from responding in damages for its knowing breach of contract .... (Footnotes omitted.)

—— U.S. at ——, 103 S.Ct. at 3181, 77 L.Ed.2d at 812. In rejecting this argument, the court in *Belknap* reasoned that while, in general, an individual contract of employment must give way to valid collective bargaining agreements, an action for breach of such an individual employment contract could still be maintained.

In this regard, the Supreme Court stated:

It is true that the federal law permits, but does not require, the employer to hire replacements during a strike, replacements that it need not discharge in order to reinstate strikers if it hires the replacements on a "permanent" basis within the meaning of the federal labor law. But when an employer attempts to exercise this very privilege by promising the replacements that they will not be discharged to make room for returning strikers, it surely does not follow that the employer's otherwise valid promises of permanent employment are nullified by federal law and its otherwise actionable misrepresentations may not be pursued. See, *J.I. Case Co. v. NLRB*, 321 U.S. 332 [64 S.Ct. 576, 88 L.Ed. 762] (1944) .... We find unacceptable the notion that the federal law on the one hand insists on promises of permanent employment if the employer anticipates keeping the replacements in preference to returning strikers, but on the other hand forecloses damage suits for the employer's breach of these very promises. Even more mystifying is the suggestion that the federal law shields the employer from damages suits for misrepresentations that are made during the process of securing permanent replacements and are actionable under state law.

Arguments that entertaining suits by innocent third parties for breach of con-

---

**4.** 29 U.S.C.A. §§ 151–69 (1973).

tract or for misrepresentation will "burden" the employer's right to hire permanent replacements are no more than arguments that "this is war", that "anything goes", and that promises of permanent employment that under federal law the employer is free to keep, if it so chooses, are essentially meaningless . . . . — U.S. at ——, 103 S.Ct. at 3177–3178, 77 L.Ed.2d at 807–808. The Supreme Court's holding on the contract claim was that there is "no basis for holding that permitting the contract cause of action will conflict with the rights of either the strikers or the employer or would frustrate any policy of the federal labor laws." —— U.S. at ——, 103 S.Ct. at 3184, 77 L.Ed.2d at 815–16.

Wien argues that since *Belknap* involved the National Labor Relations Act, rather than the Railway Labor Act, the holding of *Belknap* does not control the breach of contract issue in this case. Wien relies exclusively on *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), where the Court emphasized that "the National Labor Relations Act cannot be imported wholesale into the railway labor arena." 394 U.S. at 383, 89 S.Ct. at 1118, 22 L.Ed.2d at 357. The issue in *Trainmen* was whether a state could prohibit "secondary picketing" of a railroad terminal by striking railroad workers.[5]

Finding little guidance in the text and legislative history of the RLA, the Court looked to the NLRA for assistance in construing the RLA:

> [The NLRA] represents the only existing congressional expression as to the permissible bounds of economic combat. It has, moreover, presented problems of federal-state relations analogous to those at bar. The Court has in the past referred to the NLRA for assistance in construing the Railway Labor Act . . . and we do so again here.

394 U.S. at 383, 89 S.Ct. at 1118, 22 L.Ed.2d at 357 (citations omitted).[6]

As the Court's opinion in *Belknap v. Hale* reflects, the question of whether an employer can discharge "permanent" replacement employees without incurring liability likewise raises issues of the "permissible bounds of economic combat," and "federal-state relations." The Court's resolution of those issues in *Belknap* is not tied to any particular provision of the NLRA. Instead, the result derives from the Court's broad analysis of what types of economic weapons an employer should be allowed to wield free from state interference. Nothing in the *Belknap* opinion specifically or impliedly limits its rationale to cases arising under the NLRA. Nor has Wien directed our attention to any specific provisions of either the NLRA or the RLA that might call for different treatment of a

---

**5.** The *Trainmen* Court, while conceding the "fuzziness" of the distinction, described the difference between primary and secondary strikes as follows:

> The protected primary strike "is aimed at applying economic pressure by halting the day-to-day operations of the struck employer"; and protected primary picketing "has characteristically been aimed at all those approaching the situs whose mission is selling, delivering or otherwise contributing to the operations which the strike is endeavoring to halt," including other employers and their employees. "The gravamen of a secondary boycott," on the other hand, "is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands."

394 U.S. at 388, 89 S.Ct. at 1121, 22 L.Ed.2d at 360 (citations omitted).

**6.** For other cases where the Supreme Court has referred to the NLRA in construing the RLA, *see Steele v. Louisiana & N.R. Co.*, 323 U.S. 192, 200–201, 65 S.Ct. 226, 231, 89 L.Ed. 173, 181 (1944); and *Railroad Trainmen v. Toledo, P. & W.R. Co.*, 321 U.S. 50, 61 n. 18, 64 S.Ct. 413, 419 n. 18, 88 L.Ed. 534, 541 (1944). *See also Pan American World Airways, Inc. v. International Brotherhood of Teamsters*, 275 F.Supp. 986, 997–98 (S.D.N.Y.1967) *aff'd sub nom Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees v. Pan American World Airways, Inc.*, 404 F.2d 938 (2d Cir.1969); *International Ass'n of Machinists and Aerospace Workers v. National Railway Labor Conference*, 310 F.Supp. 905, 913 (D.D.C.1970).

*Belknap*-type claim under the RLA. Because the policies and considerations underlying the decision in *Belknap* are equally applicable to Wien's treatment of Bubbel, and because the Supreme Court has itself looked to the NLRA in determining the boundaries of economic combat protected by the RLA, we have decided that *Belknap* is apposite to the resolution of the contract claim issue in the instant case.

 We therefore hold that, in light of *Belknap*, the superior court erred in granting summary judgment against Bubbel on his breach of contract claim. Since the directed verdict against Bubbel on his estoppel theory was premised on the superior court's own prior contract ruling, that directed verdict must also be set aside.[7] We further hold that on remand Bubbel may pursue his breach of contract claim.

## IV. MISREPRESENTATION

Bubbel also contends that Wien is liable for negligent and/or fraudulent misrepresentation. He argues that the representations made by Wien of the "permanency" of Bubbel's employment were false, that these representations were made to induce him to accept employment with Wien, and that he relied on these representations in accepting such employment.

The Restatement (Second) of Torts § 552 succinctly defines the tort of negligent misrepresentation and sets out four elements to a cause of action predicated upon it.

First, the party accused of the misrepresentation must have made the statement "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest." Second, the representation must supply "false information." Third, there must be "justifiable reliance" on the false information supplied. Finally, the accused party must have failed "to exercise reasonable care or competence in obtaining or communicating the information."[8]

This court has recognized the tort of negligent misrepresentation in three prior cases. *Clary Insurance Agency v. Doyle*, 620 P.2d 194 (Alaska 1980); *Transamerica Title Insurance Co. v. Ramsey*, 507 P.2d 492 (Alaska 1973); *Howarth v. Pfeifer*, 443 P.2d 39 (Alaska 1968). In *Howarth*, we delineated the various factors which must be satisfied in order to present the question of negligent misrepresentation to the jury. *Id.* at 42. These factors reflect the basic elements which give rise to a traditional negligence claim, and are premised on the notion that the speaker has conveyed false information.

 In *Howarth*, and the subsequent cases, the representations in question all related to a present or past fact which was false at the time the representation was made. In *Howarth* and *Clary*, assurances were given regarding insurance coverage which, in fact, did not exist. In *Ramsey*, the defendant failed to discover that a pow-

---

7. Bubbel's reliance on the doctrines of equitable estoppel and quasi-estoppel may be misplaced insofar as he invoked them as the basis for an independent claim for relief. These species of estoppel operate only defensively, either as affirmative defenses or to preclude the assertion of otherwise valid defenses, acting as a "shield" rather than a "sword." *See Tiffany Incorporated v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220, 1224 (1972) (major distinction between equitable estoppel and promissory estoppel is that equitable estoppel is available only as a defense); *Gay Johnson's Wyoming Automotive Service Co. v. City of Cheyenne*, 369 P.2d 863, 864 (Wyo.1962) (per curiam) (estoppel may be asserted as a matter of defense or for the protection of a right but not for the creation of a right); Annot., 56 A.L.R.3d 1037, 1041 (1974). *See also Arctic Contractors, Inc. v. State*, 564

P.2d 30, 40 (Alaska 1977). Thus, the merits of Bubbel's estoppel arguments can only be determined in the context of an analysis of his contract claim, which does provide an affirmative basis for recovery.

8. The Restatement (Second) of Torts § 552(1) (1977) provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

er of attorney had been revoked, and treated it as valid. Study of the record in the instant case fails to reveal any evidence that the representation made by Wien of Bubbel's permanent status was false at the time it was made, or that it was made with any intent to deceive. On the contrary, the testimony of Victor Fondy, Vice President of Operations during the strike, and the deposition of Raymond Peterson, former Chairman of the Board, reflect Wien's position that the replacement pilots would be hired as permanent replacements. The record further indicates that Wien's position regarding the nature of the replacement pilots' employment did not change until Wien was pressured by the Presidential Emergency Board to settle the strike.

Although Bubbel concedes that the negligent misrepresentation, to be actionable, must relate to a present or past fact, he argues that most torts of misrepresentation involve future loss. Bubbel further maintains that, under Alaska case law, future occurrences are treated as past facts when they were the subject under discussion at the time the misrepresentations were made. *Clary Insurance Agency v. Doyle*, supra; *Transamerica Title Insurance Co. v. Ramsey*, supra; *Austin v. Fulton Insurance Co.*, 444 P.2d 536 (Alaska 1968); and *Howarth v. Pfeifer*, supra.

■ Under these cases and the Restatement (Second) of Torts § 899,[9] a cause of action for negligent misrepresentation is complete when the injured party has suffered a pecuniary loss as a result of the misrepresentation. To that extent, future occurrences can be related back to the time when the misrepresentation which resulted in the loss was made. However, to establish liability under this theory it is not enough to demonstrate that subsequent occurrences made an originally-accurate representation ultimately false. For a representation to be actionable, both under the Alaska cases cited above and under the

Restatement, the representation must be false when made.

Bubbel asks this court to hold, based on his subsequent furlough, that the representations of permanency made at the commencement of his employment with Wien were false when made. We decline. The evidence in this record does not show Wien's representations regarding the permanency of Bubbel's employment to have been false when made.

■ Bubbel's contention that Wien is liable under the tort theory of fraudulent misrepresentation must also fail for the reason that statements as to Bubbel's permanency were not false at the times they were made. Unlike negligent misrepresentation, fraudulent misrepresentation requires proof that the maker knew of the untrue character of his or her representation. Restatement (Second) of Torts § 530 comment b (1977). The circumstances under which a misrepresentation is fraudulent are set forth in the Restatement (Second) of Torts § 526 (1977):

A misrepresentation is fraudulent if the maker

(a) knows or believes that the matter is not as he represents it to be,

(b) does not have the confidence in the accuracy of his representation that he states or implies, or

(c) knows that he does not have the basis for his representation that he states or implies.

Thus, in order for Wien to be liable under the theory of fraudulent misrepresentation, Bubbel not only must adduce evidence that representations of permanent employment were false, but must also show proof of Wien's knowledge of and intent to misrepresent Bubbel's employment status with Wien. Given that Wien's statements were not false at the time they were made, we need not address the question of whether

---

**9.** Restatement (Second) of Torts § 899, comment c at 442 (1977) states: "A cause of action for misrepresentation in a business transaction is complete when the injured person has been deprived of his property or otherwise has suffered pecuniary loss or has incurred liability as a result of the misrepresentation."

the other elements of a fraudulent misrepresentation claim have been demonstrated.

One additional aspect of Bubbel's misrepresentation claim requires discussion: Bubbel contends that Wien misrepresented its legal capacity to hire him as a permanent employee.[10] Specifically, Bubbel argues that because Wien had the benefit of house counsel and outside attorneys, Wien knew that it had a unilateral right under the Railway Labor Act, and under federal cases, to renege on its promised "permanency" of employment. Bubbel reasons that in so far as Wien did not apprise him of that limitation on his permanent status, Wien misrepresented the permanency of his position.

Bubbel's argument on this theory is a narrow one: he does not dispute that when it hired him, Wien had the legal capacity to hire permanent replacement employees.[11] Bubbel concedes that Wien was not legally obliged to accept the settlement agreement proposed by the Presidential Emergency Board. Wien could have rejected the proposed settlement, defied the strikers, and continued to operate with its replacement pilots. Instead, Wien voluntarily chose to accept the settlement and furlough its replacement employees. This branch of Bubbel's misrepresentation theory, then, turns solely on Wien's failure to inform its "permanent" replacement employees that Wien could voluntarily settle the strike and thus use the collective bargaining agreement reached to override inconsistent individual employment contracts.

This court has not previously considered the question of whether a claim for relief may arise from a misrepresentation of law. Traditionally, courts have refused to recognize such representations as tortious, basing their conclusion upon the principle that "ignorance of the law is no excuse."[12] However, several recent decisions have held that this rule should be relaxed in appropriate circumstances, as for example, when

> the person making the misrepresentation "has superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed."

*Ford Motor Credit Co. v. Milburn,* 615 F.2d 892, 895 (10th Cir.1980), *quoting White v. Harrigan,* 77 Okl. 123, 186 P. 224, syl. 1 (1919). *Accord, White v. Mulvania,* 575 S.W.2d 184, 192 (Mo.1978) (en banc); *Nesbitt v. Home Federal Savings & Loan Ass'n,* 440 P.2d 738, 743 (Okl.1968); *see also National Conversion Corp. v. Cedar Building Corp.,* 23 N.Y.2d 621, 298 N.Y. S.2d 499, 246 N.E.2d 351 (1969).

**10.** For example, Bubbel argues that

> There can be little doubt that if Wien had explained to Bubbel at the time of his employment hire that the employment was "permanent," but that Wien had the unilateral right at any time to settle the strike with ALPA; that the terms of the settlement may very well affect Bubbel's continued employment—Bubbel would not have believed the employment was "permanent." ... Wien had an obligation to advise and inform Mr. Bubbel that he was not a "permanent" employee....

**11.** Following an economic strike "the employer may hire permanent replacements whom it need not discharge even if the strikers offer to return to work unconditionally." *Belknap v. Hale,* — U.S. —, —, 103 S.Ct. 3172, 3174, 77 L.Ed.2d 798, 803 (1983).

In contrast, an employer hiring replacement employees during an unfair labor practice strike governed by the NLRA may lack the legal capacity to offer permanent employment to such re-

placements. *Id.,* — U.S. —, —, 103 S.Ct. 3172, 3174, 77 L.Ed.2d 798, 803; *NLRB v. International Van Lines,* 409 U.S. 48, 93 S.Ct. 74, 34 L.Ed.2d 201 (1972). In such circumstances, the employer's representation of its capacity to hire permanent replacements might well be false and thus actionable.

**12.** See, e.g., *Hamming v. Murphy,* 83 Ill.App.3d 1130, 39 Ill.Dec. 435, 404 N.E.2d 1026 (1980), where the court refused to impose liability for misrepresentation upon a defendant-vendor of real estate who affirmatively assured a plaintiff-purchaser that a contemplated use of the property was permitted under the existing zoning ordinance. The *Hamming* court reasoned that

> [g]enerally, one is not entitled to rely upon a representation of law as both parties are presumed to be equally capable of knowing and interpreting the law.... We conclude plaintiff was charged with knowledge of the permitted uses of this property under applicable zoning ordinances ....

404 N.E.2d 1026 at 1030.

Recognizing the importance of the question, and the limited treatment it received in the briefing of this case, we decline to adopt a flat rule that misrepresentations of law are not actionable in this state. Instead, we hold, on the basis of this record, only that Wien did not misrepresent its hiring capacity.

 Central to our decision on this point is the character of the alleged misrepresentation. Wien did not tell Bubbel anything false, it merely failed to inform him of the legal consequences of something which might happen (i.e.: that Wien could possibly settle the ALPA strike).[13] There is no evidence in the record suggesting that Wien anticipated such a settlement with the striking pilots at the time it hired Bubbel. On the contrary, the record reflects Wien's intention to keep the replacement pilots in their jobs even after the strike ended. Moreover, as the holding in *Belknap* reflects, Wien's right to voluntarily breach its individual employment contracts was not absolute: the subsequent collective bargaining agreement does not relieve Wien of liability for breach of inconsistent individual contracts. In such circumstances, the appropriate remedy for Wien's breach of its commitment to keep the replacements is a suit for breach of contract, rather than for misrepresentation of Wien's capacity to enter into such contracts.[14]

Thus, we affirm the superior court's grant of a directed verdict against Bubbel on his misrepresentation claims.

For the reasons set forth above, the judgment of the superior court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

**13.** If a failure to warn a party of the possibility of a voluntary breach constitutes an actionable misrepresentation, then all contracts would involve misrepresentations.

**14.** We recognize that the Supreme Court's opinion in *Belknap v. Hale, supra,* contains language suggesting that an action for misrepresentation might be appropriate in factual circumstances similar to those before this court. However, the Supreme Court in *Belknap* held only that feder-

al labor law does not preclude "otherwise actionable" misrepresentation suits. ——— U.S. ——— at ———, 103 S.Ct. 3172 at 3178, 77 L.Ed.2d 798 at 808. The Court recognized that state law determines whether an action for misrepresentation will lie in any particular case. *Id.* We conclude that our decision on Bubbel's misrepresentation claim is consistent with the holding of *Belknap.*