WIEN AIR ALASKA, an Alaska
corporation, Appellant and
Cross-Appellee,

v.

Helmut BUBBEL, Appellee and
Cross-Appellant.

Nos. S–854, S–878.

Supreme Court of Alaska.

Aug. 22, 1986.

**628**

Max N. Peabody, Shimek & Peabody, Anchorage, for appellant and cross-appellee.

Joseph W. Sheehan, Fairbanks, for appellee and cross-appellant.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### FACTS

This is the second time that this contractual dispute has been before the court. The first case, *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374 (Alaska 1984) (hereinafter cited as *Bubbel I*), arose because of a strike by pilots at Wien Air Alaska (Wien Air). The pilots were demanding that Wien Air use three pilots, instead of two, to operate its Boeing 737 jets. During the strike, Wien Air hired replacement pilots with promises that they would become permanent pilots. The strike ended after a Presidential Emergency Board[1] recommended that Wien use two pilots, but lay off the replacement pilots in favor of the striking pilots. Although the recommendations were not binding, Wien Air and the pilots association incorporated them into their new collective bargaining agreement. Wien Air furloughed Helmut Bubbel, a replacement pilot, and placed him on its inactive pilots list.

Bubbel sued Wien Air on the theories of breach of contract, equitable estoppel, quasi-estoppel, and other theories not relevant here. Wien Air argued that the trial court should have directed a verdict in its favor because, as a matter of law, the collective bargaining agreement superseded Bubbel's individual employment contract. In *Bubbel I* we rejected that argument, holding in effect that while employers are free to hire permanent replacements, they must bear the consequences if they change their minds. *See id.* at 378–80. Hence, Bubbel could pursue his contract claims. *Id.*

Upon remand, Bubbel moved for summary judgment. He argued that, as a matter of law, Wien Air breached its employment contract with him. The trial judge granted summary judgment in favor of Bubbel. With respect to damages, the judge ruled that: (1) Bubbel's punitive damages claim could not go to the jury; (2) the jury could only award Bubbel damages from 1979 (the time of the breach) until Bubbel left Wien Air in 1983; and (3) the jury could not consider Bubbel's secondary sources of income in mitigation of damages. He also prohibited Wien Air's witnesses from testifying as a sanction against Wien Air for not answering Bubbel's interrogatories. All of these rulings are challenged on appeal.

### THE CONTRACTUAL ISSUES

I. *Was Bubbel's Employment Conditional Upon Governmental Intervention?*

■ The first question is whether Wien Air had a contractual duty to Bubbel, and,

---

1. The Presidential Emergency Board was created pursuant to 45 U.S.C. § 160 and § 44 of the Airline Deregulation Act of 1978, Pub.L. No. 95–504, 92 Stat. 1705 (1978).

if so; whether Wien Air breached its duty. Wien Air argues that the federal board's non-binding action excused its duties under employment contracts with the replacement pilots. It concedes that it repeatedly promised the replacement pilots that their employment was permanent. But it asserts that Wien Air officials qualified these promises by telling the pilots that (1) "the ... thing that ... would change [its] position would be the act of some legal action or the act of some governmental body.", and (2) "the only two unknowns are the courts and the U.S. Government." Wien Air asserts that a factual question exists as to whether these limitations excused its performance. The trial judge held that these limitations referred only to "mandatory" governmental or legal actions and granted summary judgment.

Summary judgment is only proper where there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Civil Rule 56(c); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). The proper standard by which to establish a contract's meaning is "that of the reasonable expectation[s] of the parties, i.e. 'the sense in which the party using the words should reasonably have apprehended that they be understood by the other party', and the meaning which the recipient of the communication might reasonably have given to it." *Day v. A & G Construction Company*, 528 P.2d 440, 445 (Alaska 1974) (citations omitted). Thus, to render the trial court's grant of summary judgment improper, Wien must demonstrate that there was a factual controversy concerning its and Bubbel's reasonable expectations about Wien's statements, or that Bubbel was not entitled to judgment as a matter of law.

Other than merely restating that a factual issue exists as to the parties' expectations, however, Wien Air offers no evidence and points to no facts upon which the meaning of the parties' expectations would turn. Where the surrounding circumstances are not in dispute, the court interprets the contract as a question of law. *Day*, 528 P.2d at 443. There is no factual issue.

The only question is whether Bubbel's contract with Wien included the condition that he could legally be terminated because of non-coercive governmental action towards Wien.

We hold that the limitations referred to mandatory, or at least, highly coercive conduct by the government or courts. The terms "legal action or the act of some governmental body," "government intervention," and acts by the "courts or U.S. government" connote compulsion. One of Wien's own officials testified that many of the replacement pilots left "very good jobs" to work for Wien. It is doubtful that these pilots would have agreed to sacrifice these jobs or subject themselves to the opprobrium of crossing a picket line had they known that Wien Air could renege on its promises after an *advisory* board *recommended* a strike settlement.

Wien urges the court not to make a formalistic distinction between binding and non-binding governmental action. It argues that the pressure on it to settle was immense, as evidenced by one of its officials who said that had it not followed the board's recommendation, "it would not survive." But the facts show that this statement was either an exaggeration or, if true, the pressure was due to the power of the labor union, not the advisory board. The best evidence of this is testimony by a Wien Air official that the company felt pressure because:

(1) Alaska's U.S. Senators and representatives signed a resolution which requested that the federal board address the Wien Air strike;

(2) the board's chairman stated in a newspaper article that Congress would not have authorized the board if it did not "expect results";

(3) secondary boycotts by the pilots union might occur throughout the country;

(4) the pilots union had clout in the state legislature which it used to kill a financing measure for Wien Air and had

unsuccessfully tried to pass a law requiring more pilots in the cockpits.

Wien's own Chairman and Chief Executive summed up the pressures to settle by saying that they were mostly political. The pressure Wien felt does not seem extraordinary in the context of a heated labor dispute. Reasonable people would not have expected the pilots to leave permanent jobs to be employed by Wien in exchange for a promise of permanent employment which could be terminated by Wien merely because pressures no more definite than those expressed above were perceived. In short, a contract existed and Wien Air breached it.

II. *Was Wien Air Excused from Performing on Grounds of Impossibility or Impracticability?*

■ In the alternative, Wien Air argues that its performance was excused on grounds of impossibility or commercial impracticability due to the pressures resulting from the advisory board's recommendations.

The impossibility/impracticability defense is stated in the Restatement (Second) of Contracts § 264 (1981). Section 264 provides that: "If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which

was a basic assumption on which the contract was made."[2] *Id.*

Wien Air argues that the comments to section 264 show that it does not require that the governmental action be mandatory. On the contrary, the relevant examples given by the comments indicate that the action must be mandatory. *See id.* comment a, illustration 1 (land taken by eminent domain), illustration 2 (statute forbids contract), illustration 4 (injunction prohibits contract).[3]

In conclusion, we affirm the trial judge's decision to grant summary judgment.

### PUNITIVE DAMAGES

■ Prior to the trial of the damages issue, the trial judge denied Bubbel's request to allow the jury to consider punitive damages. Bubbel claims that this was error.

In *Alaska Northern Development, Inc. v. Alyeska Pipeline Service Company*, 666 P.2d 33, 41 (Alaska 1983), *cert. den.*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984), we stated that punitive damages are not proper in a contract action unless the offensive conduct was outrageous, as acts done with malice, bad motives, or reckless indifference to the interests of another. Although these are factual questions, if there is no evidence that gives rise to an inference of outrageousness, the court will

---

**2.** Wien Air also argues that it should prevail under *Murray E. Gildersleeve Logging v. Northern Timber*, 670 P.2d 372 (Alaska 1983). *Murray* states that:

Impossibility of performance is recognized as a valid defense to an action for breach of contract when the promissor's performance becomes commercially impracticable as a result of the frustration of a *mutual expectation* of the contracting parties.... Commercial impracticability is demonstrated when performance "can only be done at an excessive and unreasonable cost."

*Id.* at 375 (citation omitted) (emphasis added). Since we held in section I that the advisory board's recommendation is *not* a mutual assumption of the parties, we also hold that a mutual expectation was not frustrated.

**3.** Wien Air also contends that the court should excuse its performance based on *Eastern Air-*

lines, *Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir.1976). *Eastern* held that an airline manufacturer's delays in delivering airplanes to the plaintiff during the Vietnam War were excused because the U.S. government had used informal pressure to achieve priority for the production of military equipment. This case, however, was decided on the basis of the wording of the particular contract involved and section 707 of the Defense Production Act. With respect to the impracticability doctrine, the court said only that McDonnell was entitled to raise any defense available under the doctrine. *Id.* at 998. It did not say whether the doctrine was, in fact, applicable. In any event, the governmental action there was "concerted" and backed by the exigencies of the Vietnam War— neither of which conditions are like those in Wien Air's case.

not allow the issue of punitive damages to go to the jury. *See id.*

No evidence in this case would support an inference of outrageousness. Bubbel argues that Wien Air's conduct was outrageous because it "acknowledged that it represented to Bubbel that he would not be terminated and replaced by the striking pilots if Wien settled the strike." This is true, but irrelevant. In *Bubbel I,* the court held that Wien's promises of permanent employment were not false when made. 682 P.2d at 381. Thus, Wien Air made the promises in good faith.

Next Bubbel argues that Wien's conduct was outrageous because it knew that the replacement pilots would be black-listed from working at other airlines because they were "scabs" for Wien during the strike, but laid them off anyhow. First, knowledge of bad consequences does not prove that Wien Air intended them or, at least, took no heed of them. This is the essence of the terms "outrageous, malice, bad motive, and reckless indifference." Bubbel's counter-interpretation—that the only requirement is that "the actor is cognizant of the consequence of his actions"— is untenable because it would sweep within its definition almost every contract breaker. And second, no reasonable juror could conclude that Wien Air was indifferent to the consequences. The evidence showed that Wien Air attempted to place the pilots with other airlines and that it objected vehemently to the federal board's recommendation that the replacement pilots' rights should be subordinate to those of the striking pilots.

Finally, awarding punitive damages would be inconsistent with the policy behind contract damages: "The purposes of awarding contract damages is to compensate the injured party.... For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." Restatement (Second) of Contracts § 355, comment a (1981). *Bubbel I* already determined that Wien's conduct was *not* tortious. 682 P.2d at 380–83. This removes the issue of punitive damages from the case.[4]

## DAMAGES PAST 1983

Bubbel contends that Wien Air also breached its employment contract with him when it denied his request for a leave of absence. To put this contention in perspective, it is necessary to review the facts.

Wien Air first laid off Bubbel in 1979, after it settled with the striking pilots. *Bubbel I,* 682 P.2d at 376. This was the basis for Bubbel's first contract action. In 1981, Wien Air recalled Bubbel. Bubbel worked from 1981 until 1982, at which time he again was laid off. Upon being told by Wien Air that a recall was unlikely in the immediate future, Bubbel committed himself to supervise the construction of an addition at a restaurant where he was a partial owner. In 1983, Wien Air recalled Bubbel for a second time. Bubbel requested a leave of absence for 120 days to finish the construction. Wien Air denied the request. The denial was based on a policy against leaves of absence which the airline adopted in 1979 to prevent disruption of the seniority system. Bubbel refused to begin work and Wien Air removed his name from its seniority lists thereby demoting Bubbel to the status of a new pilot. The airline never recalled Bubbel again. Bubbel contends that the denial breached its employment contract with Bubbel because it was not done in "good faith."

■ The trial judge ruled that this claim was separate from Wien's first contract claim. He gave Bubbel the choice of either amending his complaint or bringing an en-

---

**4.** In *McKibben v. Mohawk Oil Co.,* 667 P.2d 1223, 1232 & n. 6 (Alaska 1983), we adopted the language of the Restatement, but then, paradoxically, stated in a footnote that we did not reach "the issue of whether punitive damages are re-coverable for a breach of contract if the conduct constituting the breach is malicious but not tortious in character." We disavow this footnote to the extent it is inconsistent with the Restatement's position.

tirely separate action at a later date. Bubbel did neither and the claim did not go to the jury. Bubbel contends that the trial judge erred because it was "within the purview of the issues of the complaint in this proceeding." We disagree.

First, Bubbel filed his only complaints in this case in 1979 and in 1981. Hence, they cannot possibly cover the leave denial, which occurred in 1983. Only in the sense that Bubbel's second claim involves the same parties and is also a contractual dispute could one say that it is related to the first claim.

Second, it is Bubbel's own fault that the second claim did not go to the jury. The trial judge gave Bubbel the choice of amending the complaint—an alternative which he inexplicably failed to choose.

■ Finally, the trial judge did not abuse his discretion by threatening Bubbel with a separate trial. Under Alaska Civil Rule 42 the trial judge could have simply ordered a separate trial, without even offering Bubbel the chance to amend the complaint. Rule 42 states that: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial." The supreme court will not overrule a Rule 42 order unless it constitutes an abuse of discretion. *See Miller v. Sears,* 636 P.2d 1183, 1192 (Alaska 1981).

Had the trial judge simply ordered a separate trial under Rule 42, he would not have abused his discretion. The new claim raised entirely new issues. The main issue in the first claim was the amount of damages resulting from the 1981 firing. The issues in the new claim were (1) whether the denial of the leave request was done in bad faith, and (2) if so, the amount of damages beginning in 1983. Thus, the old and new claims shared no common issues. Allowing them in the trial would only have protracted the proceedings. By separating them, the trial judge expedited a resolution of the first claim—which had dragged on since 1979. Moreover, as the trial judge stated, the second claim did not go through the normal course of proceedings, e.g. sum-

mary judgment motions, et cetera. Perhaps there was no need for the second claim even to go to the jury. For all these reasons, it was reasonable for the trial judge to believe that separating the claims would promote convenience, avoid prejudice, and expedite the proceedings.

## MITIGATION OF DAMAGES

■ At the beginning of the damages trial, Bubbel moved to exclude evidence of income he made from the restaurant and other business interests. Bubbel had worked for these businesses and derived income from them while working at Wien Air. The trial judge granted the motion. Wien Air argues that it is entitled to a setoff for any part of this income which Bubbel would not have earned but for his layoff, i.e., mitigation of damages. We agree and reverse the trial judge's ruling.

The rule is that "[w]here an employee's wrongful discharge frees him to take another job he could not have held had he been retained, the employee can recover as damages only the difference between his actual earnings and the amount he would have earned in his old job." *Redman v. Department of Education,* 519 P.2d 760, 771 (Alaska 1974). Consequently, the trial judge or the jury must reduce "the employee's award by the amount earned from substituted employment that would have been *incompatible* with his former employment." *Id.* (emphasis added). Thus, under *Redman,* Wien Air can deduct from the damage award any increase in Bubbel's income which resulted from his lay off.

The evidence on this issue is ambiguous. Wien Air points out that Bubbel's outside income while he worked as a pilot was $7,500, but it rose to $57,500 and beyond during the time he was not working for Wien. Wien Air also observes that Bubbel requested a leave of absence from his job as a pilot in order to concentrate on his outside interests. The implication is that Bubbel could not perform both jobs at once and benefited later when he was laid off. The only evidence to the contrary is some

statements by Bubbel to the effect that he spent the same amount of time on his companies whether or not he was working as a Wien Air pilot. In light of these contradictory facts, reasonable persons could differ on whether Bubbel was able to earn more from his outside activities as a result of his lay off. This issue should go to the jury.

## SANCTIONS

At the outset of the damages trial, the trial judge prohibited Wien Air from allowing its two witnesses to testify. The basis for this ruling was that the witnesses would provide information which Wien Air had improperly withheld during discovery. Wien Air argues that this ruling was an abuse of discretion.

Alaska Civil Rule 37 authorizes trial judges to bar witnesses from testifying. Rule 37(d) states that

> If a party ... *fails* ... (2) *to serve answers or objections to interrogatories* submitted under Rule 33 ... or (3) *to serve a written response to a request for inspection* submitted under Rule 34 ... the court ... may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Subdivision (b)(2) authorizes a judge to issue "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or *prohibiting him from introducing designated matters in evidence.*" Alaska R.Civ.P. 37(b)(2)(B) (emphasis added).

The first task is to determine whether Wien Air failed to answer interrogatories or respond to a request for inspection within the meaning of Rule 37.

### I.  *The Interrogatories*

■ On October 29, 1984, Bubbel served interrogatories on Wien. These interrogatories requested Wien Air to identify the witnesses it intended to call at trial and provide a synopsis of their expected testimony. Wien Air did not answer these interrogatories until after the time limit under the Alaska Civil Rule expired. We hold, however, that Wien Air was excused from doing so because of its bankruptcy.

### A.  *The Chronology of Events*

Under Alaska Civil Rules 33 and 6, Wien Air should have answered the interrogatories within thirty days of service—by December 3, 1984.[5] On November 28, however, Wien Air filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. Under the Code, the filing operated as a stay, applicable to "all entities," of the "continuation ... of a judicial ... proceeding against the debtor." 11 U.S.C. § 362(a)(1) (Supp. II 1985). On December 6, 1984, the bankruptcy court lifted the stay in response to an ex parte motion from Bubbel. None of the parties dispute that the bankruptcy filing stayed the superior court proceeding. The issue is the effect the bankruptcy had on the time limit for answering the interrogatories.

On December 26, 1984, Bubbel moved for sanctions against Wien Air for failing to answer the interrogatories. Wien Air does not deny that it failed to respond to the interrogatory request. Bubbel also requested sanctions against Wien Air for allegedly failing to comply with a document production request (discussed below).

On January 7, 1985, the trial judge held a pre-trial conference. Wien Air still had not answered the interrogatories. The trial judge ordered Wien Air to provide answers to the interrogatories by 9:00 a.m. the following day. Wien Air then provided Bubbel with summaries of the expected testimony of Jerry Norton, Wien Air Chief Pilot, and Dennis Maloney, a Wien Air official. According to the summaries, Norton would have testified that Bubbel would not have been promoted to captain because he

---

5.  Bubbel served the interrogatories on October 29, 1984. Rule 33(a) required an answer within 30 days, i.e. by November 28. However, Rule 6(c) provides an additional three days—until December 1—because service was by mail. December 1 was a Saturday; therefore, under Rule 6(a) the response was due on December 3, the following Monday.

was not close enough to meeting a 5,000 hours flight time requirement. Maloney would have testified about the pressures on Wien Air to settle the strike and about computing damages.

Bubbel renewed his motion for sanctions claiming unfair surprise. Specifically, Bubbel argued that (1) Norton's testimony was at variance with his answers at an earlier deposition and (2) Maloney's testimony introduced a brand new approach to damages. Bubbel contended that had Wien Air answered its interrogatories, he would have learned about these changes. By not releasing the information until shortly before trial, Bubbel alleged Wien Air was engaging in "trial by ambush." The court prohibited both Norton and Maloney from testifying as sanctions for failing to answer Bubbel's interrogatories. Wien Air alleges that this ruling was improper.

### B. *Section 108 of the Bankruptcy Code*

Whether Wien Air "failed" to answer the interrogatories within the meaning of Rule 37 depends on the due date. In order to determine how much time Wien Air had, we must consider the following provision of the Bankruptcy Code:

[I]f applicable nonbankruptcy law ... fixes a time period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, *or perform any other similar act,* and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, *before the later of—*

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108(b) (Supp. II 1985) (emphasis added).

We hold that section 108(b) extended the time limits for Wien Air's answers to the interrogatories. While answering an interrogatory is not a "pleading, demand, no-

tice, proof of claim or loss, or cure [for] a default," it comes within the meaning of "any other similar act." The former Bankruptcy Act stated that: "where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, *for taking any action,* filing any claim or pleading, or *doing any act* [the trustee has sixty days from the order for relief to act.]" 2 Collier on Bankruptcy ¶ 108.02, at 108–5 (L. King 15th ed. 1985) (emphasis added). The highlighted language makes it clear that the sixty day extension applied to *any* act for which the state set a time limit. Hence, the extension would also apply to deadlines for answering interrogatories. Although the new Bankruptcy Code rearranged the wording of the old Bankruptcy Act, the provisions are *"substantively* similar." *Id.* ¶ 108.01, at 108–2 (emphasis added). The only difference is that the Bankruptcy Code now treats the commencement of an action in a different section (section 108(a)) from the filing of any pleading, demand, notice, proof of claim or loss, cure of default or performance of any other similar act (section 108(b)). *Id.*

The current statute's language also supports our interpretation. It extends the time for filing "any pleading." 11 U.S.C. § 108(b) (Supp. II 1985). This language would obviously include filing an answer. Thus the statute does not extend time periods only for debtors who are potential plaintiffs. The statute also includes action to "cure a default." *Id.* Extending the period within which a debtor may cure a default affords the debtors greater protection than does our present action holding the statute modifies discovery time limits.

Furthermore, extending the deadline for answering the interrogatories is in accord with the policy behind section 108(b). The purpose of this section is to permit the debtor "an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights." *Id.* Answering the interrogatories was required for Wien Air to preserve its rights.

Next we must calculate whether section 108(b)(1) or section 108(b)(2) controls. The statute applies the time limit which is "later." However, the precise calculation of the extension under 108(b)(1) is not important because section 108(b)(2) provides for a much longer extension—sixty days. Subsection (b)(1) would only have extended Wien's response period by several days. Under section 108(b)(2) Wien Air had sixty days from the time of the "order for relief" to answer the interrogatories. Section 301 of the Bankruptcy Code states that: "The commencement of a voluntary ... case constitutes an order for relief...."[6] 11 U.S.C. § 301 (1983). Subsection (b)(2) therefore controls. Wien Air filed for bankruptcy on November 28. It would have had until early February to answer the interrogatories. Since Wien Air answered the interrogatories on January 8— before the sixty day deadline—no basis existed for the sanctions.

## II. *The Request for Production of Documents*

■ Bubbel also requested that Wien Air produce bargaining agreements covering the terms of employment, seniority lists, furlough lists, jet crew lists, certain personnel files, and Wien Air's financial statements. Wien Air answered this request with a written response, which indicated that these documents had already been produced, were attached to its response, or were available for inspection at its attorney's offices. Bubbel contends,

however, that when his attorney arrived at counsel's office to inspect the documents "[i]t was obvious that not 'all personnel' files were produced which had been requested." Specifically, he stated that: "those which related to leave requests concerning replacement pilots and the dates (1983 and subsequent) were either missing or not made available."

It is unclear why the parties are arguing this issue before the supreme court. Nothing in the judge's discussion of sanctions indicates that the sanctions rested on this issue.[7]

If this issue were properly before the court, we would reverse the trial judge's ruling. Rule 37 does not authorize sanctions where one party contests another's compliance with a production request. Rule 37 only permits sanctions where a party fails "to serve a written response to a request for inspection." *See* Alaska R.Civ.P. 37(d)(3) (failure of a party to respond). Since Wien Air *did* serve a written response, sanctions are unavailable. Bubbel's only remedy was to move for an order under Rule 37(a) which would have compelled Wien Air to remedy the alleged problem. *See* Alaska R.Civ.P. 34(b) (production of documents and things). Then, if Wien Air disobeyed the Rule 37(a) order, Bubbel could have moved for sanctions under Rule 37(b) (failure to comply with order).

The trial court's decisions are REVERSED in part, AFFIRMED in part, and

---

**6.** Section 301 sets forth the procedure for commencing a voluntary case under the operative chapters, i.e., chapter 7, Liquidation, chapter 9, Adjustment of Debts of a Municipality, chapter 11, Reorganization, and chapter 13, Adjustment of Debts of an Individual with Regular Income.... Section 301 further provides that the commencement of the voluntary case constitutes an "order for relief" under the operative chapter.
2 Collier on Bankruptcy ¶ 301.01 (L. King 15th ed. 1985).

**7.** The trial judge said only that: "The Court is going to grant the request—plaintiff's request to enter a preclusion order against *these witnesses testifying* for failure to make discovery as ordered by the Court." Nothing was said about

*production of documents.* Moreover, during the oral arguments which preceded the trial judge's order, neither Bubbel nor Wien Air even mentioned the document production request.

The document production request should not be confused with Bubbel's interrogatory which requested all flight hours on 737 jets. At the pre-trial conference on January 7, Bubbel argued that Wien Air still had not produced this information. The trial judge ordered Wien Air to provide the information by the next day with a threat that if the information was not disclosed he would preclude Wien Air from introducing it. Neither the record nor the briefs indicates that the parties or the judge ever again discussed the information. Presumably this meant that Wien Air complied.

REMANDED for proceedings consistent with this opinion.