LEE HOUSTON & ASSOCIATES, LTD. and Kenneth Krasselt, Appellants and Cross–Appellees,

v.

Aletha RACINE, Appellee and Cross–Appellant.

No. 3668.

Supreme Court of Alaska.

March 1, 1991.

---

Brett von Gemmingen, Anchorage, for appellants and cross-appellees Lee Houston & Associates and Krasselt.

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for appellee and cross-appellant Racine.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

This case involves several claims arising from alleged misconduct of a real estate agent. On appeal, we must review trial court determinations with respect to (1) when the claims accrued for purposes of the statute of limitations, (2) which statute(s) of limitation apply to the various claims, and, if any of the claims were timely brought, and (3) whether the plaintiff submitted sufficient evidence to avoid a directed verdict on her prayer for two items of damages (lost profits and punitive damages).

## I. FACTS AND PROCEEDINGS

Aletha and Wayne Racine lived together for approximately thirty years before Wayne's death in 1981. The two were not married, but together they operated a business known as "The Jockey Club," located in Moose Pass, Alaska. The property upon which the club was located was owned by

Jockey Club, Inc. Aletha claimed an interest in the corporation following Wayne's death intestate in 1981. Wayne Racine's two daughters, Carol Racine Morgan and Betty Racine Farris (who represented the estate of Wayne Racine as personal representatives), also claimed an interest in the corporation.

In 1983 Aletha Racine and the Estate of Wayne Racine entered into a listing agreement with Kenneth Krasselt, a real estate agent with Lee Houston & Associates, Ltd., to sell the Jockey Club property. On January 23, 1984 Marcia Crowell made a written offer to purchase the Jockey Club property on the following terms: a total purchase price of $355,000 with $100,000 cash at closing, and the remainder financed with a $255,000 promissory note secured by a third deed of trust on a property known as the "Grizzly Trailer Court" located in Anchorage. The offer was accepted by Aletha Racine and the Estate of Wayne Racine the following day, and closing took place on or about March 16, 1984.

Aletha Racine alleges that Krasselt represented to her prior to sale of the property and during the closing that she was receiving "an exceptional deal," and that she had "nothing to worry about" because she would be receiving a third deed of trust position, with only $70,000 to $80,000 in debt ahead of her,[1] on a property worth over $600,000. In fact, the documents signed at the closing by Aletha Racine and the representatives of the Estate of Wayne Racine indicate that the sellers were receiving a *sixth* deed of trust position, with over $410,000 in superior indebtedness on the property.[2]

Shortly after the closing, Aletha Racine and the Estate of Wayne Racine reached a settlement in their ongoing dispute over the Racine Estate. As part of this settlement, the Estate assigned to Aletha Racine all of its interest in the secured promissory note received from Marcia Crowell in exchange for the Jockey Club property. Crowell continued to make regular payments to Racine on the note until September 1985, when her payments ceased. After unsuccessful attempts to bring about resumption of payments, Racine contacted an attorney, Jesse C. Bell, in January 1986. Bell apparently consulted with Racine, reviewed the escrow materials she had brought to him, and promised to prepare a demand letter. In February 1986 Bell contacted Racine to advise her that no response to the demand letter had been received from Crowell.

Apparently no further action was taken on the matter until April 1986 when Racine received a foreclosure notice from the holder of a senior deed on the Grizzly Trailer Court property. Racine thereafter contacted Bell, who investigated the matter and informed Racine (1) that she held a sixth, rather than a third, deed of trust position on the property and (2) that there was hundreds of thousands of dollars in debt superior to hers, rather than the $70,000 to $80,000 she had anticipated.

Racine filed suit against Krasselt and Lee Houston & Associates (Lee Houston) on March 21, 1988, alleging several tort claims, including negligence, misrepresentation, and fraud. The complaint also contained a cause of action for breach of professional contract of employment. Racine sought punitive as well as compensatory damages, including damages for "lost profits" which Racine might have received had she been able to foreclose upon a third deed of trust and sell the property at market value.

Prior to trial, Lee Houston sought summary judgment on the grounds that (1) although one of Racine's claims was framed in breach of contract terms, her claims were in fact based upon breach of a duty of care implied by law and thus sounded in tort rather than contract, and (2) all of Racine's claims were barred by the two-

---

1. The Grizzly Trailer Court property was encumbered by, *inter alia,* a first deed of trust for $18,000 and a second deed of trust for $60,000.

2. The escrow instructions signed by Aletha Racine state in part that the "[p]resent indebtedness on [the Grizzly Trailer Court property] is $410,698.08 as of 3/16/84 *which [the sellers] are inferior to."* The deed of trust signed by Racine specified five superior deeds of trust. The title insurance policy likewise revealed the senior encumbrances.

year statute of limitations contained in AS 09.10.070.[3] The motion was denied.[4]

Trial commenced, and, at the conclusion of Racine's case, Lee Houston moved for a directed verdict on Racine's claims of negligence, misrepresentation and fraud, on the ground that they were barred by the two-year statute of limitations;[5] it also sought a directed verdict on Racine's claims for lost profits and punitive damages. The trial court granted Lee Houston's motion, concluding (1) that Racine knew or should have known of Lee Houston's alleged misfeasance no later than February 1986 (when Racine was informed by counsel that no answer to the demand letter was forthcoming) and, because she filed her complaint in March 1988, her tort claims were thus barred by the two-year statute of limitations; (2) Racine's claim for lost profits was too speculative to be submitted to the jury; and (3) reasonable minds could not differ that Racine had failed to introduce clear and convincing evidence demonstrating entitlement to punitive damages.

However, over Lee Houston's objections, the trial court submitted the case to the jury on the breach of contract claim. The jury returned a verdict in favor of Racine.

Lee Houston appeals, contending that the trial court erred in submitting the case to the jury on the breach of contract claim. Racine cross-appeals, contending that the trial court erred in directing a verdict on her tort claims and in rejecting her claims for punitive damages and lost profits.

## II. DISCUSSION

A. *Racine's causes of action accrued more than two years, but less than six years, from the date she filed her complaint on March 21, 1988.*

**3.** AS 09.10.070 is set forth *infra* at n. 8. A six-year limitations period is provided for by AS 09.10.050, which is set forth *infra* at n. 7.

**4.** Racine cross-moved for partial summary judgment and that motion was likewise denied.

**5.** As to Racine's fraud claim, Lee Houston alternatively sought a directed verdict based upon insufficient evidence. Although the trial court declined to rule on this alternative theory in light of its statute of limitations ruling, it strongly suggested that it would otherwise have concluded that the evidence on the fraud claim was

■ Racine claims that at the time she signed the closing documents she thought she was receiving a third deed of trust on the Grizzly Trailer Park property; an encumbrance inferior to only $70,000 to $80,000 worth of indebtedness. She in fact received a sixth deed of trust inferior to over $400,000 of indebtedness. Racine contends that she did not discover the discrepancy until April 1986, when she received a foreclosure notice from a senior deed holder and subsequent investigation by her attorney revealed the terms of the closing documents. She therefore argues that the statute(s) of limitation applicable to her causes of action did not begin to run until April 1986, within two years of March 21, 1988, the date she brought the action.

Where the plaintiff does not actually know of the existence of elements essential to her cause of action, under the "discovery rule," the limitations period does not begin to run until "a reasonable person [in like circumstances would have] enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights." *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988). The evidence here, when viewed in a light most favorable to Racine, creates a reasonable inference that Racine did not in fact know of her actual security position until April 1986; however, we agree with the trial court that no later than February 1986 a "reasonable person" in Racine's situation would have possessed "enough information" concerning Lee Houston's alleged misfeasance to "begin an inquiry" to protect her rights.[6]

insufficient as a matter of law to support a jury verdict.

**6.** In reviewing the trial court's directed verdict on this question, we must determine whether the evidence, when viewed in a light most favorable to Racine, the non-moving party, is such that reasonable persons could not differ in their judgment. *See Korean Air Lines Co., Ltd. v. State*, 779 P.2d 333, 338 (Alaska 1989); *see also Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987) ("[T]he question of whether a party discovered or reasonably should have discovered an injury ... in most circumstances involves

Racine signed several documents at the closing which revealed the true nature of the security position she was receiving, including one which expressly stated that the Grizzly Trailer Park property was encumbered by some $410,000 in debt "which [the sellers] are inferior to." Several months later she received separate copies of the closing documents, which she could, presumably, review at her leisure. Racine testified that she did review the documents, then placed them in a filing cabinet. In September 1985 she learned of Crowell's default, but did not then investigate her potential remedies or security position. Not until January 1986 did she contact her attorney, who also claims to have reviewed the escrow documents provided by Racine. In February 1986 the attorney informed Racine of Crowell's failure to respond to a demand letter, but she continued to delay investigation of her potential remedies or security position until April 1986, when a superior creditor informed her of its own foreclosure action on the property.

Given these facts, we believe that the superior court correctly concluded that reasonable minds could not differ on the question whether Racine should have begun investigation into her security interest no later than February 1986. By that time, Crowell's payments were five months overdue, she had not responded to a demand for payment, and both Racine and her attorney had reviewed the closing documents. Her claims thus accrued more than two years before March 21, 1988, the date she brought the action.

**B.** *Racine's breach of contract action, whether regarded as an action upon a fiduciary duty arising from the agreement or as professional malpractice, was timely brought within the six-year limitation period provided by AS 09.10.050.*

We have held that the "gravamen" of the plaintiff's claim determines whether the "contract" or "tort" statute of limitation applies. That is, if the plaintiff's claim sounds in contract, the six-year limitation period of AS 09.10.050[7] applies; if it sounds in tort, the two-year period of AS 09.10.070[8] applies. *See Van Horn Lodge, Inc. v. White,* 627 P.2d 641, 643 (Alaska 1981); *Austin v. Fulton Ins. Co.,* 444 P.2d 536, 538–39 (Alaska 1968).

Lee Houston contends that Racine brought a breach of contract claim only as a matter of form, not substance. It argues that Racine's claim sounds in tort as a claim of professional malpractice, rather than in contract as a breach of the listing agreement. Lee Houston points out that under the agreement it expressly promised only two things: (1) to "use due diligence in procuring a purchaser" and (2) to "submit this listing to the multiple listing service within seventy-two hours." Racine does not claim that either of these specific promises were breached and, according to Lee Houston, allegations that it failed to use reasonable care in securing for Racine a closing in conformity with the sale agreement, or that it failed to use reasonable care in disclosing the terms of the closing documents, are in substance allegations of tortious conduct (i.e., negligence) and are therefore governed by AS 09.10.070.

Lee Houston relies on *Van Horn Lodge,* where, consistent with Lee Houston's argu-

determination of questions of fact to be made by the fact-finder rather than by the trial judge.").

**7.** AS 09.10.050 provides that
[n]o person may bring an action (1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040 or 09.10.055; (2) for waste or trespass upon real property; or (3) for taking, detaining, or injuring personal property, including an action for its specific recovery, except those mentioned in AS 09.10.055; unless commenced within six years.

**8.** AS 09.10.070 provides that
[n]o person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

ment in the present case, we classified an attorney malpractice claim as a tort (i.e., negligence) because there was no allegation of a breach of a "particular" promise, and "the claim that [the attorneys] breached an implied term of their contract of employment, to render competent and diligent legal services, [was] only a claim that they failed to exercise due care."[9] 627 P.2d at 643. We reasoned that the duty of due care was "imposed by law," and that "[t]he contract only gave rise to the duty." *Id.*

Racine responds that her claim lies in contract because the listing agreement gave rise to fiduciary duties owed, and allegedly breached, by Lee Houston. Among the fiduciary duties owed by real estate agents to their clients are the duty to "exercise reasonable care, skill, and judgment in securing for the principal the best bargain possible" and the duty to make "full, fair, and timely disclosure to the principal" of known facts material to the principal's interests. *Black v. Dahl*, 625 P.2d 876, 881 (Alaska 1981). Racine claims that because such duties arise in contract, an alleged breach thereof comes within AS 09.10.050.

Racine's position also finds support in our case law. In *Bibo v. Jeffrey's Restaurant*, 770 P.2d 290 (Alaska 1989) we held that an alleged breach of a fiduciary duty by a corporate director (the fiduciary duty to honestly and diligently direct corporate business) is, in essence, a claim upon "implied contract" and thus comes within AS 09.10.050.[10] *Id.* at 295–96.

*Bibo* and *Van Horn Lodge* are difficult to reconcile. Both cases involved alleged professional incompetence. In neither case was it alleged that the defendant promised (expressly or impliedly) to do a particular thing and then failed to perform.[11] Rather, to use the language of *Van Horn Lodge*, in both cases "[t]he duty that [was] allegedly breached was ... imposed by law. The contract only gave rise to the duty[.]" 627 P.2d at 643. In *Bibo*, the director-corporation agreement gave rise to a fiduciary duty to "honestly and diligently direct the business of the corporation." 770 P.2d at 295. In *Van Horn Lodge*, the attorney-client agreement gave rise to a duty to render "competent and diligent legal services." 627 P.2d at 643. Thus, in both cases, we dealt with a professional's alleged breach of a duty of due care which was implied by law as a result of a contractual undertaking. Yet in one case the claim was deemed to be in contract, while in the other case the claim was deemed to be in tort. This disparity cannot be meaningfully justified by the formalistic distinction that in *Van Horn Lodge* the claim was characterized as malpractice, whereas in *Bibo* the claim was characterized as breach of fiduciary duties. " 'This court should avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities.' " *Jones v. Wadsworth*, 791 P.2d 1013, 1017, (quoting *Higa v. Mirikitani*, 55 Haw. 167, 517 P.2d 1, 4–5 (1973)).

The substantial irreconcilability of these cases results from the limited utility of the "gravamen" test in the context of claims of professional incompetence which may be reasonably said to arise either in tort or in

---

**9.** Recently, in *Jones v. Wadsworth*, 791 P.2d 1013 (Alaska 1990), we called into question the validity of the *Van Horn Lodge* distinction between breaches of "particular" promises and breaches of "implied" promises. *Id.* at 1016–17. However, we found it unnecessary to resolve the question because the case then before us came within the former category and was therefore clearly governed by AS 09.10.050 as an action "upon a contract." *Id.* at 1017. Whether the breach of an implied promise (such as an implied promise to use due care) also came within AS 09.10.050 was not decided.

**10.** We noted a split of authority on the issue, but opted for a contract, rather than tort, classi-

fication "because of the preference given to the longer period of limitations when two periods reasonably may apply." 770 P.2d at 295–96.

**11.** A claim based on the alleged breach of a specific, express or implied-in-fact term of a contract would come within AS 09.10.050 as an action "upon a contract ... express or implied." *See Wettanen v. Cowper*, 749 P.2d 362, 364 (Alaska 1988) (observing that an argument to the effect that AS 09.10.050 applied to an attorney malpractice action where the attorney failed to appear for trial was "not without plausibility" on the basis that it was "implicit if not explicit" that an attorney retained to represent a client will attend trial).

contract. *Id.* Therefore, to resolve the statute of limitations question presented by this case, we believe that there is a need to re-examine the scope of the so-called "tort" and "contract" statutes. In doing so, we are mindful of the need for consistency and clarity in this quite confusing area of law. *See id.*

■ To begin with, we point out that AS 09.10.070 and AS 09.10.050 do not create a tort-contract dichotomy. AS 09.10.070 states, in relevant part: "No person may bring an action ... for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided for otherwise ... unless commenced within two years." By its own terms, this provision extends to, but not beyond, personal torts [12] unless the action is for an injury to the "rights of another *not arising on contract* and not specifically provided for otherwise." (Emphasis added.) Thus, for claims that do not involve personal, reputational or dignitary injury, the right(s) allegedly infringed upon must "not aris[e] on contract." [13] This suggests the inapplicability of AS 09.10.070 to actions arising out of professional service relationships which primarily involve economic injury, since, as already indicated, the duty allegedly breached *does* in part arise from the contract.

On the other hand, AS 09.10.050 contains language which suggests inclusion of professional service relationship actions. In relevant part, the statute applies to an action "upon a contract *or liability.*" (Emphasis added.) Unless we are to ignore the "or liability" language, the statute must be interpreted as applying to a category of actions broader than those based only on contract principles. Indeed, "[l]iability is a broad legal term which is usually held to include every kind of legal obligation, responsibility or duty.... Liability may arise from contract, express or implied, from duty imposed by law, or by judgment of a court, or as a consequence of tort committed." *Mayfield v. First National Bank of Chattanooga,* 137 F.2d 1013, 1019 (6th Cir.1943); *see also Black's Law Dictionary* 823 (5th ed. 1979). Because of the breadth of such a provision, other "contract" statutes have been held to apply to actions arising out of professional service relationships. *See Higa v. Mirikitani,* 55 Haw. 167, 517 P.2d 1, 5 (1973) (statute of limitations applicable to actions upon a "contract, obligation, or liability" encompasses attorney malpractice actions "which have as their gravamen injury to intangible property interests"); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 840, 491 P.2d 421, 424 (1971); 2 A.L.R. 4th 300–303 (1980) (collecting cases which treat statutes of limitations for actions upon a " 'contract, obligation, or liability' or the like" as a "hybrid" statute). We believe now, as we did when we decided *Wadsworth,* that this interpretation has "considerable merit." [14] 791 P.2d at 1017.

■ Two other considerations support application of AS 09.10.050, rather than AS 09.10.070, to the present claim. First, although the defense of the statute of limitations is a legitimate one, it is generally disfavored by the courts. *Jenkins v. Daniels,* 751 P.2d 19, 22 (Alaska 1988). There-

---

**12.** A *"[p]ersonal tort ... involv[es] ... an injury to the person or to the reputation or feelings, as distinguished from an injury or damage to real or personal property, called a 'property tort.' "* *Black's Law Dictionary* 1335 (5th ed 1979).

Property torts are generally governed by AS 09.10.050. That is, AS 09.10.050 applies to claims "for waste or trespass upon real property ... or ... for taking, detaining, or injuring personal property...." *See e.g., Vest v. First National Bank of Fairbanks,* 659 P.2d 1233, 1234 (Alaska 1983) (action for conversion governed by six-year period of AS 09.10.050); *Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.,* 694 P.2d 150, 156 (Alaska 1984) (strict liability and negligence claims governed by 09.10.050 because they involved injury to personal property).

We express no view as to whether the statutory phrase "not arising on contract" also modifies "injury to the person" as that question is not involved in this case.

**13.** An example of a claim not involving a personal, reputational or dignitary injury (i.e., involving economic loss), and not arising on contract, would be a claim of fraud or misrepresentation not based on fiduciary duties owed by a contracting party.

**14.** However, as we also pointed out, the question presented in *Wadsworth* did not require reconsideration of the approach we took in *Van Horn Lodge* because the case clearly came within AS 09.10.050 as an action upon a specific, express contractual undertaking. *See* 791 P.2d at 1017.

fore, doubts as to which of two statutes is applicable in a given case should be resolved in favor of applying the statute containing the longer limitations period. *See id.* at 22 n. 6; *see also Bibo*, 770 P.2d at 296 (opting for application of AS 09.10.050 over AS 09.10.070 "because of the preference given to the longer period of limitations when two periods reasonably may apply").

■ Second, application of a six-year limitation period, rather than a two-year period, to claims arising out of professional service relationships involving economic loss is consistent with the primary purpose of the statutes of limitations. The statutes are intended to encourage prompt prosecution of claims and thus avoid injustices which may result from lost evidence, faded memories and disappearing witnesses. *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087, 1090 (Alaska 1979). Actions like the present one involving economic loss are often based largely on documentary evidence[15] not unaided recollections which quickly grow stale. On the other hand, a shorter limitations period is consistent with the more evanescent nature of evidence which is frequently found in cases involving personal, reputational or dignitary injuries.

For the foregoing reasons, we hold that the present case involves action upon a "contract or liability" for purposes of AS 09.10.050, and is therefore subject to a six-year limitation period. To the extent that *Van Horn Lodge* is inconsistent, it is overruled. Accordingly, the decision of the trial court to submit Racine's breach of contract claim to the jury is affirmed.

C. *The trial court did not err in directing a verdict against Racine on her claims for lost profits and punitive damages.*

■ Racine sought damages for "lost profits" on the theory that, had there actually been only $70,000 to $80,000 of indebtedness ahead of her on the Grizzly Trailer Court property, she could have foreclosed upon the property, purchased it at auction, paid off the senior creditors, and sold it for its market value of between $500,000 and $600,000. The trial court directed a verdict on the issue, reasoning, in part, that Racine failed to introduce evidence sufficient to lead reasonable jurors to conclude that she had proven lost profit damages with reasonable certainty.[16] This ruling was correct.

As we have explained:

Loss of profits damages have been awarded in a variety of civil contexts, including tort actions ... [and] contract actions.... In any case seeking loss of profits, such damages must be "reasonably certain": the trier of fact must be able to determine the amount of lost profits from evidence on the record and reasonable inferences therefrom, not from mere speculation and wishful thinking.

*State v. Hammer*, 550 P.2d 820, 824–25 (Alaska 1976) (footnotes omitted). Here, the only evidence of lost profits introduced by Racine was evidence tending to suggest that the property had a fair market value of between $500,000 and $600,000 at the time of default, that Racine had $80,000 in her possession at the time of the default and that she "could get more money if [she] needed it." As the trial court observed, there was no evidence from which a jury could have estimated the price at which the property would have sold at a foreclosure sale, or the likelihood that Racine would or could have outbid other bidders (including junior creditors) hoping to make the same "profits" on the property sought by Racine. The directed verdict on the issue is therefore affirmed.

**15.** For example, in the present case, much of the evidence related to Lee Houston's alleged negligence in handling the closing is documented in the sale agreement (which included the promise of a third deed of trust) and various closing documents (which reveal a transfer of a sixth deed of trust).

**16.** A directed verdict is proper only if the evidence, when viewed in a light most favorable to the non-moving party, is such that reasonable minds could not differ in their judgment. *See supra* n. 6.

Racine also appeals the trail court's directed verdict against her on the issue of punitive damages. While there is not a simple tort-contract dichotomy determining the applicable statute of limitations, there is for determining whether punitive damages are recoverable. We have consistently maintained that "[p]unitive damages are not recoverable for breach of contract unless the conduct constituting the breach constitutes an independent tort." *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1153 (Alaska 1988); *see also Great Western Savings Bank v. George W. Easley Co.*, 778 P.2d 569, 580 (Alaska 1989) ("punitive damages are not normally allowed on a breach of contract claim unless the conduct would also be a tort"); *Walt v. State*, 751 P.2d 1345, 1354 (Alaska 1988) (punitive damages unavailable because claimant "assert[ed] no recognizable tort claims"); *Wien Air Alaska v. Bubbel*, 723 P.2d 627, 630–31 (Alaska 1986).[17] Thus, it would seem that we must decide whether Racine's hybrid action is a "tort" for purposes of determining the availability of punitive damages.

■ However, we need not address this question. Even if we assume that punitive damages are recoverable in actions such as the present one, the trial court properly ruled that they could not be recovered in this case. "Punitive damages may not be awarded in an action, whether in tort, contract, or otherwise, unless supported by clear and convincing evidence." AS 09.17.-020. Specifically, the plaintiff must prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another. *See Hayes v. Xerox Corp.*, 718 P.2d 929, 934 (Alaska 1986). "If the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, then the trial court need not submit the

issue of punitive damages to the jury." *Id.* at 935.

■ Here, the only evidence Racine offers in support of her punitive damages claim is her own allegation that during the closing Mr. Krasselt told her that she was receiving a third deed of trust position. While reasonable jurors could thus believe that a misrepresentation occurred, they would have no basis for determining that Krasselt's mental state rose to a level of culpability equivalent to actual malice. The misrepresentation alone does not provide a reasonable basis for a clear and convincing inference that it was made in conscious disregard of the terms of the closing documents, rather than the result of a careless oversight. The trial court's ruling directing a verdict on the issue was therefore correct.

AFFIRMED.

BURKE, J., with whom MOORE, J., joins, dissenting.

BURKE, Justice, with whom MOORE, Justice, joins, dissenting.

I agree that our decisions in *Van Horn Lodge, Inc. v. White*, 627 P.2d 641 (Alaska 1981), and *Bibo v. Jeffrey's Restaurant*, 770 P.2d 290 (Alaska 1989), cannot be reconciled in any meaningful way, and that one case should be overruled. Upon reflection, however, I conclude that it is *Bibo*, rather than *Van Horn Lodge*, which is flawed, and that our holding in *Van Horn Lodge* should control the result in the case at bar.

The defendant's relationship to the plaintiff in *Bibo*, like that of an attorney to the attorney's client, was a fiduciary relationship. Because of the nature of the relationship, certain duties were owed to the plaintiff whether or not the defendant intended to be thus bound; those duties arose because the law provides such consequences whenever people agree to form a

---

17. In *Bubbel*, we also stated that punitive damages are "proper in a contract action [if] the offensive conduct was outrageous ...", 723 P.2d at 630, but our more recent cases have embraced a more limited view also expressed in *Bubbel* that "'courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.'" *Id.* at 631, (quoting Restatement (Second) of Contracts § 355, comment a (1981)).

fiduciary relationship. It was for breach of these duties that damages were sought.

In the case at bar, it is clear that the listing agreement obtained from the plaintiff created a fiduciary relationship between the parties. It is wrong, however, to say that the plaintiff's present claim is one "arising on [the parties'] contract," *i.e.*, from the breach of promises made in the listing agreement. The claim arises from the defendants' breach of duties imposed upon him regardless of the parties' intent when the listing agreement was made; like the ordinary tort feasor's duty of reasonable care, these were duties imposed by the laws of society. Accordingly, I would hold that the plaintiff's action is barred by the two year statute of limitations, under our holding in *Van Horn Lodge*, because the complaint sounds in tort rather than contract. To eliminate the existing conflict between *Van Horn Lodge* and *Bibo*, I would overrule the latter.